1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10

11   SHIKEB SADDOZAI,                          Case No. 18-04511 BLF (PR)

          Plaintiff,
12                                             **ORDER GRANTING
                                               DEFENDANTS' MOTION FOR
13        v.                                   SUMMARY JUDGMENT**

14   DR. SPENCER, et al.,

15          Defendants.

16                                             (Docket No. 31)

17

18        Plaintiff, a state prisoner, filed a *pro se* civil rights complaint under 42 U.S.C. §

19   1983.  The Court found the amended complaint, Dkt. No. 10[1], stated a cognizable claim of

20   deliberate indifference to serious medical needs under the Eighth Amendment against

21   Defendants Dr. Robert Spencer and Nurse Practitioner Amanda Anguelouch at the San

22   Mateo County Jail, Maguire Correctional Facility ("MCF"), and ordered the matter served

23   on Defendants.  Dkt. No. 14.  Defendants filed a motion for summary judgment on the

24   grounds that Plaintiff has not established the essential elements for a deliberate

25   indifference to serious medical needs claim under the Eighth Amendment as a matter of

26

27   _____

     [1] All page references herein are to the Docket (ECF) pages shown in the header to each
28   document and brief cited, unless otherwise indicated.

law, and they are entitled to qualified immunity.  Dkt. No. 31.[2]  Plaintiff was provided five extensions of time to file an opposition, with the last order granting him a final extension of time until October 21, 2020.  Dkt. Nos. 44, 48, 53, 55, 59.  He did not file an opposition in the time provided.  Accordingly, on November 4, 2020, Defendants filed a notice of Plaintiff's non-opposition to their summary judgment.  Dkt. No. 60.

Thereafter, Plaintiff filed a letter dated November 8, 2020, requesting another extension of time due to COVID-19 related lockdowns and limited access to the prison law library.  Dkt. No. 61.  The request for additional time, which was filed more than two weeks after the opposition deadline had expired, is DENIED as the Court made clear in its last order that no further extensions of time would be granted for the reasons stated therein.  Dkt. No. 59 at 2.

For the reasons stated below, Defendants' motion for summary judgment is **GRANTED**.

## DISCUSSION

### I.    Statement of Facts[3]

The underlying events took place while Plaintiff was detained at MCF as of February 12, 2016, until July 30, 2018, when he was transferred to the California Department of Corrections.  Sheng Decl., Ex. A; Dkt. No. 31-1.  Plaintiff was treated at

---

[2] In support of their motion, Defendants provide the declarations of counsel Paul S. Sheng, Dkt. No. 31-1, Dr. Kenton Fong, a non-party, Dkt. No. 31-2, and Defendant Dr. Robert Spencer, Dkt. No. 31-3.  Accompanying these declarations are exhibits that include copies of Plaintiff's records from the San Mateo County Sheriff's Department, excerpts from Plaintiff's medical records from various institutions, copies of his grievances related to the relevant medical issues, and copies of unanswered interrogatories, requests for production of documents and admissions sent to Plaintiff.  Dkt. No. 31-1, Exs. A-CC; Dkt. No. 31-2, Exs. A-F; Dkt. No. 31-3, Exs. A-S.  Exhibits with a notation "subject to sealing motion" accompanying the declarations of Mr. Sheng and Dr. Fong can be found under Defendants' Administrative Motion to File under Seal, Dkt. No. 29, which was withdrawn and stricken.  *See* Dkt. No. 44.

[3] Because Plaintiff did not file an opposition or declaration, the Court will take into consideration the factual allegations in his verified amended complaint.  Dkt. No. 10.

United States District Court
Northern District of California

United States District Court
Northern District of California

San Francisco General Hospital for a gunshot wound to his right forearm on February 8, 2016, and then came into MCF's custody on February 12, 2016.  Dkt. No. 10 at 4.  According to Plaintiff, he was discharged from the hospital with "medical instructions, ordering county jail physicians to schedule treatment for surgery with a hand specialist for damages to [Plaintiff's] dominant hand, and arm, and the attendant pain, and suffering of a gun[]shot wound." *Id.*  Plaintiff also claims that Dr. Fong, a plastic surgeon, referred him to Stanford for the surgery, but that Defendants Dr. Spencer and Nurse Amanda at MCF caused unnecessary and excessive delay over a period of two years, resulting in further pain and suffering, specifically with respect to the following: (1) delaying an EMG test until December 2, 2016; (2) failing to follow up on a referral to Stanford for surgery as ordered by Dr. Fong; and (3) failing to act upon his numerous grievance complaints.  *Id.* at 4-5.  Based on these allegations, the Court found Plaintiff stated a cognizable claim under the Eighth Amendment for deliberate indifference to serious medical needs.  Dkt. No. 14 at 2-3.

Defendant Dr. Spencer is the Medical Director of the County of San Mateo Correctional Medicine.  Spencer Decl. ¶ 3; Dkt. No. 31-3.  In that role, Defendant Spencer manages and personally provides medical care to inmates, as well as overseeing and consulting with Family Nurse Practitioners in connection with their provision of medical care to inmates at MCF.  *Id.*  Defendant Spencer is personally familiar with the medical care provided to Plaintiff while he was incarcerated at MCF from February 2016 through July 2018.  *Id.*

Stanford Medical Center ("Stanford") is the tertiary care provider for San Mateo County Correctional Medicine ("SMCCM"), meaning that if SMCCM is unable to provide a service, e.g., a specialist consultation, the patient is referred to the secondary care provider, which is San Mateo Medical Center.  Spencer Decl. ¶ 4.  If San Mateo Medical Center is unable to provide a procedure, the patient is referred to the tertiary care provider.  *Id.*  However, SMCCM has neither the right nor the ability to compel Stanford to accept a

3

1  patient referral for a procedure such as a tendon transfer.  *Id.*

2         Plaintiff was booked into MCF on February 11, 2016, after being discharged from

3  San Francisco General Hospital with a gunshot wound to his right arm.  Sheng Decl., Ex.

4  A.  Care and management of the gunshot wound, such as dressing changes, was provided

5  by SMCCM nursing staff 42 times between February 12, 2016 through April 1, 2016.  *Id.*,

6  Ex. B; Dkt. No. 29-1 at 2-9.  According to his medical records, Plaintiff received regular

7  treatment at MCF, which included the following: on February 11, 2016, narcotic pain

8  medication was ordered and provided to Plaintiff for pain secondary to his recent gunshot

9  wound injury, Sheng Decl., Ex. C, Dkt. No. 29-1 at 16; on February 15, 2016, Plaintiff had

10  evaluation and treatment for his gunshot wound by a Family Nurse Practitioner ("FNP"),

11  *id.*, Ex. C, Dkt. No. 29-1 at 18-19; and on February 17, 2016, Plaintiff had a follow-up

12  visit with an FNP, and further medication (Gabapentin) was ordered, *id.*, Ex. E, Dkt. No.

13  29-1 at 21.  On March 30, 2016, Plaintiff was evaluated at MCF by visiting orthopedist Dr.

14  Paul Linquist, who recommended a referral to plastic surgery.  *Id.*, Ex. F; Dkt. No. 29-1 at

15  23.  On April 26, 2016, Defendant Spencer saw and evaluated Plaintiff, and ordered an X-

16  ray of his right forearm.  *Id.*, Ex. G; Dkt. No. 29-1 at 25.

17         Then on May 2, 2016, Plaintiff had a first-time consultation with Dr. Kenton Fong,

18  the Chief of Plastic and Reconstructive Surgery, at San Mateo Medical Center.  Sheng

19  Decl., Ex. H; Dkt. No. 29-1 at 27-28; Fong Decl. ¶ 1.  Dr. Fong noted Plaintiff's complaint

20  of an inability to extend his small (pinky) finger and ring finger and diminished sensation

21  in his middle finger, small finger, and ring finger.  Fong Decl. ¶ 3.  Plaintiff also reported

22  0/10 pain.  *Id.*  Dr. Fong assessed Plaintiff with ulnar and radial nerve palsy and ordered an

23  EMG (electromyelogram) study to evaluate the injury further.  *Id.*, Ex. B; Dkt. No. 29-1 at

24  83-84.  Two days later, on May 4, 2016, Plaintiff had an X-ray of his right forearm which

25  showed no fracture, dislocation, subluxation (partial dislocation), periostitis

26  (inflammation), or osteolysis (bone degeneration).  Sheng Decl., Ex. I; Dkt. No. 29-1 at 34.

27         On May 16, 2016, Plaintiff had a follow-up visit with Dr. Fong.  Fong Decl. ¶ 4.

28
                                                    4

United States District Court
Northern District of California

1  The EMG had not been completed yet, and Plaintiff otherwise had no change in status at

2  that time.  *Id.*  Plaintiff reported 0/10 pain during the visit.  *Id.*, Ex. C, Dkt. No. 29-1 at 86-

3  87; Sheng Decl., Ex. J, Dkt. No. 29-1 at 36-37.  On May 24, 2016, Plaintiff had the EMG

4  study, performed by Dr. Siegel, at San Mateo Medical Center.  Sheng Decl., Ex. K; Dkt.

5  No. 29-1 at 39-42.

6  On June 27, 2016, Plaintiff had another follow-up visit with Dr. Fong.  Fong Decl. ¶

7  5.  Plaintiff reported 0/10 pain at this visit, his examination was unchanged, and Dr. Fong's

8  assessment remained the same.  *Id.*  At the time, Dr. Fong thought Plaintiff might benefit

9  from a tendon transfer procedure for his symptoms, but that it would be prudent to wait a

10  year to see what function returned and then to consider a tendon transfer procedure at that

11  time if there was no meaningful recovery of function.  *Id.*  The tendon transfer procedure is

12  elective and can be done at any time.  *Id.* ¶ 9.  In Plaintiff's case, there was no particular

13  window of opportunity to have the procedure done.  *Id.*  Nevertheless, Dr. Fong believed it

14  would be a good case to refer to the Stanford Hand & Upper Extremity Center for their

15  opinion.  *Id.* ¶ 5, Ex. D, Dkt. No. 29-1 at 89-90; Sheng Decl., Exs. L, M, Dkt. No. 29-1 at

16  44-45, 47-48.  Dr. Fong submitted a referral request to Stanford.  Fong Decl. ¶ 6, Ex. E,

17  Dkt. No. 29-1 at 92-93.

18  On July 22, 2016, Dr. Fong received correspondence from Stanford, declining the

19  referral because the patient – Plaintiff – was in jail, they cannot see him in the clinic until

20  he was released from the system.  Fong Decl. ¶ 7, Ex. F, Dkt. No. 29-1 at 95; Sheng Decl.,

21  Ex. N, Dkt. No. 29-1 at 50.

22  On December 2, 2016, Plaintiff had another follow-up visit with Dr. Fong.  Fong

23  Decl. ¶ 8.  Plaintiff reported 0/10 pain and little improvement in his hand function since his

24  last visit.  *Id.*  Plaintiff continued to complain of loss of ring finger and small finger

25  extension, but otherwise had normal extension of his index and middle fingers, and

26  intrinsic function of his hand muscles was present.  *Id.* ¶ 12.  Dr. Fong noted that Plaintiff

27  would most likely benefit from a tendon transfer procedure and had been hoping for an

28  5

opinion from Stanford since he did not perform tendon transfers. *Id.* ¶ 8. However, since Stanford previously stated it would not see Plaintiff until he was released from the system, a further referral to them would be futile since Plaintiff was still incarcerated. *Id.*, Ex. G, Dkt. No. 29-1 at 97-98; Sheng Decl., Ex. P, Dkt. No. 29-1 at 52-53. This was the last follow-up visit Plaintiff had with Dr. Fong. Fong Decl. ¶ 12.

In between his last two follow-up visits with Dr. Fong, Plaintiff was scheduled for a six-month physical exam on October 21, 2016, but he refused to be seen. Sheng Decl., Ex. O, Dkt. No. 31-1 at 32. About two months later, on December 23, 2016, Plaintiff had a six-month physical exam with Defendant Amanda Angueloch, FNP. *Id.*, Ex. Q. Dkt. No. 29-1 at 55. Then about a year later, on December 8, 2017, Plaintiff had an annual exam again with Defendant Angueloch. *Id.*, Ex. R, Dkt. No. 29-1 at 57.

From December 2017 until July 30, 2018, when he was transferred from MCF to the California Department of Corrections, Plaintiff's medical records contain no record of him making any complaints to Defendant Spencer or any other SMCCM staff regarding his arm/hand symptoms from his gunshot wound. Sheng Decl., Ex. S; Dkt. No. 29-1 at 59-79.

## II.    **Summary Judgment**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

United States District Court
Northern District of California

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted); Fed. R. Civ. P. 56(e). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the

7

inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id*. at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Id*. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

## A.   **Deliberate Indifference**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id*. The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must

United States District Court
Northern District of California

United States District Court
Northern District of California

1    actually draw that inference.  *Id*.  If a prison official should have been aware of the risk,

2    but was not, then the official has not violated the Eighth Amendment, no matter how

3    severe the risk.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002).

4        Defendants assert that Plaintiff cannot establish deliberate indifference to serious

5    medical needs because he cannot establish that they knew of and disregarded an excessive

6    risk to his health and safety, and that any alleged delay they caused in treatment led to

7    further injury.  Dkt. No. 31 at 11.  Defendants first assert that Dr. Fong's declaration

8    establishes that Plaintiff's hand complaints never presented an excessive risk to his health

9    and safety, and that any delay in getting an elective tendon transfer procedure did not lead

10   to further injury.  *Id.*  Defendants also assert that there are no triable issues of material fact

11   with respect to any of Plaintiff's principal allegations offered in support of his deliberate

12   indifference claim, specifically that they (1) delayed an EMG test until December 2, 2016;

13   (2) failed to follow up on a referral to Stanford for surgery as ordered by Dr. Fong; and (3)

14   failed to act upon his numerous grievance complaints.  Dkt. No. 10 at 4-5.

15       Based on the evidence submitted and viewing it in the light most favorable to

16   Plaintiff, the Court finds there is an absence of disputed material facts with respect to the

17   issue of whether Plaintiff suffered from a serious medical condition which required surgery

18   to satisfy the first element of a deliberate indifference claim.  The medical records

19   submitted by Defendants show that Plaintiff received consistent and ongoing care for his

20   gunshot wound by nursing staff, Family Nurse Practitioners like Defendant Anguelouch,

21   and medical doctors like Defendant Spencer, including dressing changes, medication and

22   evaluations, after he arrived at MCF on February 11, 2016.  *See supra* at 3-6.  Defendant

23   Spencer personally saw and evaluated Plaintiff and ordered an X-ray on April 26, 2016.

24   *Id.* at 4.  When a visiting orthopedist recommended a referral to plastic surgery, Plaintiff

25   was promptly referred and began meeting with Dr. Fong about a month later, on May 2,

26   2016.  *Id.* at 4.  Thereafter Plaintiff met with Dr. Fong several times for treatment for his

27   hand complaints.  *Id.* at 4-5.  Dr. Fong states in his declaration that at their third meeting

28

on June 27, 2016, when Plaintiff's condition remained unchanged, he believed that Plaintiff might benefit from a tendon transfer procedure but that it would be prudent to still wait a year to see if function returned before considering it. *Id.* Dr. Fong states that the tendon transfer procedure was elective and could be done at any time. *Id.* at 5. He also states that there was no particular window of opportunity to have the procedure done. *Id.* Furthermore, Dr. Fong states that there was no present nor any past emergency or urgent need for Plaintiff to undergo a tendon transfer procedure for his symptoms, and that in his medical opinion, no further harm or injury has resulted or will result to Plaintiff by waiting until some future date to have the tendon transfer procedure. *Id.* ¶ 10. Moreover, Dr. Fong states that the lack of the tendon transfer procedure in the past has not caused Plaintiff to suffer from any pain, as indicated by the "0/10" pain reported by Plaintiff at each of his visits with Dr. Fong. *Id.* ¶ 11. Based on his physical examination of Plaintiff and his statements to him, Dr. Fong states that Plaintiff did not have any complaints of pain in his right hand such that postponing the procedure to some point in the future will not cause him to suffer from any pain. *Id.* Lastly, Dr. Fong states that the hand symptoms that Plaintiff presented with never posed an excessive risk to his health or safety, nor would they significantly impair him from performing activities of daily living. *Id.* ¶ 12. In opposition, Plaintiff has filed no response to indicate that any of these facts are in dispute, and none of his statements in the amended complaint provide sufficient evidence to create a triable issue of fact. Accordingly, Plaintiff has failed to establish a genuine dispute of material fact as to whether he suffered from a serious medical condition which, without an elective procedure, would result in further significant injury or the "unnecessary and wanton infliction of pain." *See Farmer*, 511 U.S. at 834. Defendants are therefore entitled to summary judgment on this claim. *See Celotex Corp.*, 477 U.S. at 323.

Furthermore, Defendants have submitted evidence showing there is an absence of a genuine dispute of material fact with respect to Plaintiff's specific allegations against them with respect to the following: (1) Defendants delayed an EMG test until December 2,

2016; (2) they failed to follow up on a referral to Stanford for surgery as ordered by Dr. Fong; and (3) they failed to act upon his numerous grievance complaints.

With respect to the first allegation, Dr. Fong's declaration and the medical records show that Dr. Fong ordered an EMG following his first examination of Plaintiff on May 2, 2016. *See supra* at 4. The EMG was performed approximately 3 weeks later, on May 24, 2016. *Id.* Therefore, there is no evidence that Defendants delayed an EMG until December 2, 2016, as Plaintiff alleges, since he received the EMG six months earlier. Plaintiff has filed no response to refute these facts, and none of his statements in the amended complaint provide sufficient evidence to create a triable issue of fact on this claim. Accordingly, Defendants have established that there is an absence of evidence to support Plaintiff's claim and is therefore entitled to summary judgment on this claim. *See Celotex Corp.*, 477 U.S. at 323, 325.

Secondly, Dr. Fong's declaration shows that he was the one who made the initial referral to Stanford on June 27, 2016, and that he received a response on July 22, 2016, stating that they cannot see Plaintiff until he was released from the system. *Id.* at 5. When Dr. Fong saw Plaintiff for the last time on December 2, 2016, he still believed that a referral to Stanford would be helpful. *Id.* However, because Stanford's response to his first referral stated clearly that they would not see Plaintiff until he was released and because they could not be compelled to accept a patient referral, another attempt to refer the matter to Stanford would have been futile, as Defendants point out. Dkt. No. 31 at 12. Defendant Spencer also states in his declaration that Plaintiff was still within the three-year period of time for his injury to be monitored, in accordance with the medical standard of care, and therefore the lack of a second referral does not rise to the level of a constitutional violation. Spencer Decl. ¶ 21. Based on the evidence submitted by Defendants, the lack of a follow-up may indicate a negligence or malpractice claim at best, but not deliberate indifference to a serious medical need. *McGuckin*, 974 F.2d at 1059 (mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's 8th

United States District Court
Northern District of California

United States District Court
Northern District of California

Amendment rights).  Plaintiff has filed no response to indicate otherwise, and none of his statements in the amended complaint provide sufficient evidence to create a triable issue of fact on this claim.  Accordingly, Defendants are entitled to summary judgment on this claim.  *See Celotex Corp.*, 477 U.S. at 323, 325.

Lastly, Plaintiff claims that "Doctor Spencer and nurse practitioners failure to act on [Plaintiff's] medical need for surgery, not available at jail facility, and upon [Plaintiff's] own grievance complaints submitted on: March 21, 2016; July 18th, 2016; May 22nd, 2018 has caused [Plaintiff] continuous pain, and suffering [Plaintiff's] disability which is interfering with his life activities for [Plaintiff's] lifetime."  Dkt. No. 10 at 4.  Defendants assert that these allegations are factually incorrect and demonstrate that Plaintiff does not have affirmative evidence sufficiently probative to carry his ultimate burden of persuasion at trial.  Dkt. No. 31 at 13.  First with respect to the grievances allegedly filed on March 21 and July 28, 2016, Defendants assert that records subpoenaed from the San Mateo County Sheriff's Office show that Plaintiff submitted only two grievances related to medical issues in 2016: (1) a July 13, 2016 grievance complaining that he notified medical staff about a tumor-like growth in his lower spine, but was not seen by a nurse or doctor; and (2) a July 18, 2016 grievance complaining about unauthorized transaction withdraws for medical co-pays.  Sheng Decl., Exs. T, U; Dkt. No. 31-1 at 38, 40-41.  A review of these records indeed shows that neither of these grievances relate to hand injury at issue in this case.  In contrast, Plaintiff's medical records show that throughout 2016 he was seen for his hand injury by various providers, including Defendants Angueloch and Spencer, as well as a radiologist (X-ray), an orthopedist, a neurologist (EMG), and a plastic surgeon.  *See supra* at 2-6.  These facts are undisputed, and Plaintiff has failed to respond with any evidence establishing otherwise.  Lastly, Plaintiff did submit a grievance on May 22, 2018, as he claims, as confirmed by the records subpoenaed from the Sheriff's Department.  Sheng Decl., Ex. V; Dkt. No. 31-1 at 43.  However, Plaintiff claimed in that grievance that he was "denied medical care on 5/21/18; unknown medical personnel intentionally failed to render

medical services upon multiple heath care service requests; unknown medical personnel failed and refused [Plaintiff's] right to medical privacy by failing to wear badges showing licensing credentials or identifying their names."  Sheng Decl., Ex. V; Dkt. No. 31-1 at 43. Apparently, this grievance was filed in response to an incident on May 21, 2018, when a nurse, who is not a party to this action, came to speak to Plaintiff in response to a medical request to see a doctor.  Sheng Decl., Ex. W; Dkt. No. 29-1 at 81.  Plaintiff repeatedly demanded to be "put… down to see the Dr." but refused to explain the reason why he needed to see a doctor.  *Id.*  The nurse noted that Plaintiff "became increasingly angry, hostile and aggressive" and threatened to send a grievance to medical while yelling obscenities.  *Id.*  The nurse noted "[n]o further action taken due to angry/hostile nature of inmate and safety concerns."  *Id.*  The Court agrees with Defendants that this grievance is not relevant to the claims in this action involving treatment for his gunshot wound against Defendants Spencer and Anguelouch who are not mentioned in the grievance at all. Plaintiff has filed no response to establish otherwise, and none of his statements in the amended complaint provide sufficient evidence to create a triable issue of fact on this claim.  Accordingly, Defendants are entitled to summary judgment on this claim.  *See Celotex Corp.*, 477 U.S. at 323, 325.

Based on the foregoing, Defendants have established the absence of a genuine issue of material fact with regard to the Eighth Amendment claim against them.  *See Celotex Corp.*, 477 U.S. at 323.  In response, Plaintiff, having filed no opposition, has failed to identify with reasonable particularity the evidence that precludes summary judgment, *id.* at 324; *Keenan*, 91 F.3d at 1279, or to come forth with evidence from which a jury could reasonably render a verdict in his favor, *In re Oracle Corporation Securities Litigation*, 627 F.3d at 387; *Liberty Lobby*, 477 U.S. at 25.  Accordingly, Defendants are entitled to summary judgment on this claim.  *Celotex Corp.*, 477 U.S. at 323.

///

///

United States District Court
Northern District of California

**CONCLUSION**

For the reasons stated above, Defendants Dr. Robert Spencer and Nurse Practitioner Amanda Anguelouch's motion for summary judgment is **GRANTED**.  Dkt. No. 31.  The Eighth Amendment claims against them are **DISMISSED with prejudice**.[4]

This order terminates Docket No. 31.

**IT IS SO ORDERED.**

**Dated:  __November 20, 2020_____**

BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.18\04511Saddozai_grant.MSJ

_____
[4] Because the Court finds no constitutional violation occurred, it is not necessary to discuss Defendants' qualified immunity argument.

14

United States District Court
Northern District of California